KLOPPENBURG, J.[1]
¶ 1 L.H. seeks reversal of the order terminating her parental rights to S.H. L.H. argues that the circuit court erroneously determined that the Rock County Department of Human Services met its burden of proving that there was a substantial likelihood that L.H. would not meet the conditions for the safe return of S.H. within nine months because, as L.H. asserts, the court found that "[it] did not know whether L.H. would meet the conditions." For the reasons stated below, the order is affirmed.
BACKGROUND
¶ 2 In April 2015, the Rock County Department of Human Services removed L.H.'s daughter S.H. from L.H.'s home. In June 2015, S.H. was found to be a child in need of protection and services (CHIPS) and was placed out of L.H.'s home pursuant to a Dispositional Order issued by the circuit court. S.H. has remained out of L.H.'s home since then. The Dispositional Order listed the following eight conditions with which L.H. was required to comply in order for S.H. to be safely returned to L.H.:
1. The mother must demonstrate the ability to meet the child's physical, medical, educational, and emotional needs on a daily basis. This includes but is not limited to choosing appropriate care providers for the child.
2. The mother must demonstrate a consistent interest in being and the ability to function as, a full-time parent to the child.
3. The mother must maintain a clean, safe and stable residence, suitable for children, which is free from criminal activity and drug and alcohol use. The mother must demonstrate an ability to manage the needs of the child while also maintaining the home in a cleanly and safe manner. The mother must report all police contact with her residence to the department immediately.
4. The mother must remain drug and alcohol free and will take any medication only as prescribed by her treating physician. Under no circumstances will the mother ever take any other person's medication or any medication not specifically prescribed to her....
5. The mother must not allow anyone involved in drug and alcohol use or criminal activity to reside or congregate in her home.
6. The mother must stabilize her mental health and demonstrate the ability to handle the everyday stresses of parenting the child.
7. The mother must refrain from all criminal activity. The mother will immediately advise the department of any contacts with law enforcement.
8. If the mother is in a relationship with someone other than the father, that person must satisfy the above listed return conditions as well.
¶ 3 In June 2016, the Dispositional Order was extended until June 20, 2017 because L.H. had not met the return conditions and did not have a stable residence.
¶ 4 On June 16, 2017, the Department filed a petition for the termination of L.H.'s parental rights, alleging that S.H. was in continuing need of protection and services (continuing CHIPS).
¶ 5 In January 2017, a two-day court trial was held on the petition to terminate L.H.'s parental rights to S.H. The following witnesses testified at the trial: the Department's AODA coordinator who worked with L.H. in 2014 and 2015; a mental health and substance abuse disorders therapist who worked with L.H. in February through May 2017; a police officer who testified about two drug-related law enforcement contacts with L.H. in July 2017 and who arranged for an emergency detention for L.H. in the first contact; a psychiatric technician who worked with L.H. in January through May 2017; a parenting group case manager who worked with L.H. in February through April 2017; a substance abuse counselor who worked with L.H. in July 2017; an AODA counselor who worked with L.H. from January through November 2017; an AODA therapist who worked with L.H. in June 2015; a doctor who performed an addictive-disease evaluation of L.H. in November 2017; a Department social worker assigned to S.H.'s case since 2015; a therapist at Rogers Memorial Hospital who worked with L.H. in November and December 2017; and L.H.
¶ 6 At the conclusion of the trial, the circuit court determined that the Department had proved the continuing CHIPS ground for termination of parental rights. The court then held a dispositional hearing, after which the court terminated L.H.'s parental rights to S.H. This appeal follows.
DISCUSSION
¶ 7 "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." Steven V. v. Kelley H. , 2004 WI 47, ¶ 24, 271 Wis. 2d 1, 678 N.W.2d 856. "In the first, or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist." Id. "[I]f grounds for the termination of parental rights are found by the court or jury, the court shall find the parent unfit." Tammy W-G. v. Jacob T. , 2011 WI 30, ¶ 18, 333 Wis. 2d 273, 797 N.W.2d 854 (quoted sources omitted). The second phase, the dispositional hearing, "occurs only after the fact-finder finds a Wis. Stat. § 48.415 ground has been proved and the court has made a finding of unfitness. In this step, the best interest of the child is the 'prevailing factor.' " Id. , ¶ 19 (quoted source and citations omitted).
¶ 8 On appeal, L.H. challenges only the first step, establishing the statutory ground of continuing CHIPS for termination of parental rights. To establish the continuing CHIPS ground for termination of parental rights under WIS. STAT. § 48.415(2)(a), the Department must prove the following four elements:
1. "That the child has been adjudged to be a child ... in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders...." Sec. 48.415(2)(a)1.
2. "That the agency responsible for the care of the child and the family ... has made a reasonable effort to provide the services ordered by the court." § 48.415(2)(a) 2.b.
3. "That the child has been outside the home for a cumulative total period of 6 months or longer pursuant to such orders...." Sec. 48.415(2)(a)3.
4. "[T]hat the parent has failed to meet the conditions established for the safe return of the child to the home and there is a substantial likelihood that the parent will not meet these conditions within the 9-month period following the fact-finding hearing...." Sec. 48.415(2)(a)3. (emphasis added).[2]
¶ 9 L.H.'s appeal addresses only part of the fourth element, which provides that the Department must prove that there is a substantial likelihood that L.H. will not meet the conditions established for the safe return of S.H. within nine months of the trial. Specifically, L.H. argues that because the circuit court made the "finding" that it "did not know whether L.H. would meet the conditions," the Department did not meet its burden of proving that there was a substantial likelihood that L.H. would not meet the conditions for the safe return of S.H. within nine months. In other words, according to L.H., "the evidence did not persuade [the court] that there was a substantial likelihood that L.H. would not meet the conditions" because the court stated that it did not know whether L.H. would meet the conditions. Therefore, L.H. argues, the Department did not meet its burden of proof, and the court misapplied the law to its factual findings.[3]
¶ 10 L.H.'s argument fails because it takes the circuit court's remarks out of context. A review of the court's complete ruling reveals that the court weighed the evidence of L.H.'s recent progress against the other evidence presented, and found that, on balance, the evidence did establish that there was a substantial likelihood that L.H. would not meet the safe return conditions within nine months of trial.
¶ 11 The circuit court began by acknowledging L.H.'s progress in being drug-free for the two months before the trial. The court went on to qualify that L.H.'s progress "doesn't mean ... that we can ignore what has happened in the past or what my knowledge is based upon the evidence presented here." The court cited testimony establishing that doing well in overcoming drugs for a few months does not mean that that success will continue in the long term. The court then reviewed the evidence showing that since the court first found S.H. in need of protective services, "the progress of the case was zero or even negative for quite some time," "things didn't get better; they got worse," and L.H. had never met the return conditions. The court found that it was reasonable for the Department to have referred L.H. to multiple treatment facilities, that it was L.H.'s performance that caused various treatment facilities to end services, that the Department was able to reopen those services a number of times, and that L.H. was not "ready, willing, [or] able to" receive those services. The court stated that while L.H. testified that she had met all but one the return conditions, in fact L.H. had only met "maybe one of the return conditions." The court then determined that the Department had proved that there was a substantial likelihood that L.H. would not meet the safe return conditions within nine months of trial.
¶ 12 In the course of its ruling, the circuit court stated that "I don't know" whether L.H. will meet all of the conditions within the next nine months. L.H. argues that this statement is a "finding of ultimate fact" that should have precluded the court from determining that the Department proved that there was a substantial likelihood that L.H. would not meet the safe return conditions within nine months of trial. However, reading this statement in context establishes that the court was not finding any fact, but was elaborating on its earlier discussion as to whether two months of being drug-free indicated that rehabilitation would continue in the long term, considering the other facts in evidence. In the course of that discussion, the court weighed L.H.'s recent progress against the rest of the record before it and concluded that L.H.'s progress in the past two months did not outweigh her "zero or even negative" progress in the two years since the return conditions were first imposed, or the fact that she had met at most only one of the return conditions at the time of trial.
¶ 13 Thus, the court did not find, as L.H. contends, that it did not know whether she would meet the return conditions; rather, it was considering whether evidence of L.H.'s recent drug-free status was sufficient evidence that she would meet the return conditions in light of other evidence in the record. The court weighed the uncertainty over L.H. remaining drug-free against the other evidence presented and concluded that L.H. was substantially unlikely to meet the return conditions within the allotted time.
¶ 14 L.H.'s argument is accurately characterized as a challenge to the circuit court's weighing of the evidence in the record to support its determination that the Department proved that there was a substantial likelihood that L.H. would not meet the conditions established for the safe return of S.H. within nine months of the trial. This court defers to circuit courts on credibility and weight-of-evidence determinations. See Lessor v. Wangelin , 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998) ("When the [circuit] court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony."); Jacobson v. American Tool Cos. , 222 Wis. 2d 384, 390, 588 N.W.2d 67 (1998) ("[w]e are not to weigh conflicting evidence to determine which should be believed.").
¶ 15 In sum, L.H. has failed to show that the circuit court erroneously determined that the Department proved that there was a substantial likelihood that L.H. would not meet the conditions established for the safe return of S.H. within nine months of the trial.
CONCLUSION
¶ 16 For the reasons stated, the order terminating L.H.'s parental rights to S.H. is affirmed.
By the court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The legislature amended this statute in April 2018, subsequent to the relevant events of this case.

L.H. also asserts that the circuit court's statement that it did not know whether L.H. would meet the conditions "suggests" that the court was erroneously placing the burden of proof on L.H. to prove that she would meet the safe return conditions. L.H. does not develop this burden-shifting argument, and, therefore, I do not consider it further. See Associates Fin. Servs. Co. of Wis. v. Brown , 2002 WI App 300, ¶ 4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (the court may decline to consider conclusory and undeveloped arguments that are not adequately briefed).